**Christopher K. WASHINGTON,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 45A03–1004–CR–226.

Court of Appeals of Indiana.

Jan. 21, 2011.

Transfer Denied March 17, 2011.

Kristin A. Mulholland, Office of the Public Defender, Crown Point, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Indianapolis, IN, Joby D. Jerrells, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Senior Judge.

### *STATEMENT OF THE CASE*

Defendant–Appellant Christopher K. Washington appeals the sentence the trial court imposed for his conviction for battery, a Class A felony. Ind.Code § 35–42–2–1 (2007).[1] We affirm.

### *ISSUE*

Washington raises one issue, which we restate as whether Washington's sentence is inappropriate in light of the nature of the offense and the character of the offender.

### *FACTS AND PROCEDURAL HISTORY*

On October 4, 2007, Washington was carrying E.B., a five-month-old child, from the home of the child's grandmother to the home of the child's aunt in Gary. Washington was also escorting three other children, ages six, six and five, to the aunt's home. During the trip, Washington struck E.B. with his fist several times. When they arrived at the aunt's house, Washington placed E.B. on a bed and did not tell anyone what happened. E.B. was later discovered to be unresponsive and was pronounced dead at a hospital.

The State charged Washington with murder, battery, and aggravated battery. The parties executed a plea agreement, pursuant to which Washington pleaded guilty to battery as a Class A felony and the State dismissed the remaining charges. The parties' plea agreement capped the executed portion of Washington's sentence at forty years. Subsequently, the trial court sentenced Washington to thirty-five years.

---

1. The statute was amended in 2008 and 2009. We cite to the version of the statute that was in effect when Washington committed the offense.

## DISCUSSION AND DECISION

█ Washington's sentencing challenge is governed by Indiana Appellate Rule 7(B), which provides, in relevant part, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." To assess the appropriateness of the sentence, we look first to the statutory range established for the class of the offense. Here the offense is a Class A felony, for which the advisory sentence is thirty years, the shortest sentence is twenty years, and the longest sentence is fifty years. Ind.Code § 35–50–2–4 (2005).

We then look to the nature of the offense and the character of the offender. The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation in it. *See Gauvin v. State,* 883 N.E.2d 99, 105 (Ind.2008) (noting that the defendant's crimes against a child were "heinous and cruel"). The character of the offender is found in what we learn of the offender's life and conduct. *See generally Houser v. State,* 823 N.E.2d 693 (Ind.2005) (reviewing the defendant's childhood, history of drug abuse, diagnosis of mental illness, and extensive criminal history).

█ An inappropriate sentence is not an erroneous sentence. It is a sentence authorized by statute, but one we find inappropriate and revise in light of the offense and the character of the offender. In reviewing a sentence, we give due consideration to the trial court's decision and its more direct knowledge of the offense and the offender. *See Wilkes v. State,* 917 N.E.2d 675, 693 (Ind.2009) (stating, "[a]s in all sentencing, . . . we give considerable deference to the ruling of the trial court"). The burden is on the defendant to persuade us that the sentence of the trial court is inappropriate. *Childress v. State,* 848 N.E.2d 1073, 1080 (Ind.2006).

Our review here of the nature of the offense shows that the trial court accurately identified the circumstances as "brutal." Tr. p. 102.[2] Washington struck a defenseless infant with his fist several times, causing her death, in the presence of other young children. Furthermore, upon arriving at the home of E.B.'s aunt, Washington did not tell anyone what he had done or seek medical help for E.B.

Our review here of the character of the offender shows that Washington was eighteen years old when he committed the offense, a fact that the trial court identified as a mitigating circumstance. Nevertheless, Washington has a juvenile criminal history, including adjudications for what would have been robbery and intimidation if committed by an adult. Washington violated the terms of his probation several times. In addition, he had only been released from a juvenile detention center for three months prior to committing the instant crime. This pattern of conduct demonstrates that despite Washington's young age, he has been provided numerous opportunities to comply with the law and has rejected those opportunities. We further note that Washington's history includes extensive substance abuse. He reports that he began using marijuana and ecstasy at age thirteen. When Washington turned eighteen, he began using PCP as well.

The court found as a mitigating factor that Washington has "untreated mental and emotional health issues that are relatively long-standing." Tr. p. 101. Wash-

**2.** The record includes transcripts of Washington's guilty plea hearing and sentencing hearing. In this opinion we cite exclusively to the sentencing transcript and exhibit.

ington contends that his mental illness was a major factor in his commission of the crime and renders his sentence inappropriate. There are several considerations that bear on the weight, if any, which should be given to mental illness in sentencing. These factors include: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Krempetz v. State*, 872 N.E.2d 605, 615 (Ind.2007).

Washington presented little evidence that mental illness renders him unable to control his behavior. Prior to sentencing, Washington was examined by Gary Durak, a clinical and forensic psychologist. Durak diagnosed Washington with substance dependency and "antisocial personality disorder with narcissistic and histrionic traits." Tr. Exhibit 1, p. 23. Durak indicated that Washington's antisocial personality disorder "played a role in his prior illegal activities." *Id.* at p. 24. Nevertheless, Durak stated that the disorder is treatable with therapy. Furthermore, Durak testified at sentencing that when Washington is not using drugs, he operates "within normal limits." Tr. p. 21.

It does not appear that mental illness prevents Washington from carrying out life's basic obligations. Washington had dropped out of school and had a lengthy history of fighting in school. Furthermore, school personnel diagnosed Washington as emotionally handicapped. However, after interviewing Washington, Durak attributed Washington's school difficulties in part to a learning disability and lack of family support. When asked why Washington did not seek a G.E.D. after dropping out, Durak blamed a lack of family support and Washington's drug use. Durak further noted that when Washington was placed in special schools, his needs were met and his prognosis had improved. Regarding Washington's work history, Washington only held one job and quit because it was "too difficult." Tr. p. 29. Durak attributed Washington's lack of steady employment not to mental illness but to the absence of a strong male figure to guide him and help him set goals. Durak concluded that Washington can function in society, but he needs a structured supervision program to help him stay off drugs, obtain a G.E.D. and get a job.

Turning to the duration of Washington's mental illness, we note that Washington has a history of emotional problems. School personnel diagnosed him as emotionally handicapped, and he attended special classes from the seventh through the tenth grade. Washington briefly attended counseling after he was placed in a special school, but he reported that it was not helpful and otherwise did not receive inpatient or outpatient psychological counseling.

Finally, there is no apparent nexus between the crime and Washington's mental illness. Prior to pleading guilty, Washington was examined by Douglas Caruana, a psychologist, and Bhawani Prasad, a doctor. Caruana indicated in his report that Washington did not meet the criteria for insanity at the time he committed the crime. In addition, Dr. Prasad concluded that Washington was sane at the time he committed the crime. Durak testified that Washington was psychotic at the time he committed the crime. However, Durak concluded that Washington's use of illegal substances gave rise to his psychotic state. Durak agreed with the State that "the drugs caused this incident." Tr. p. 58.

Based upon these four factors, Washington's mental illness bears little weight on

our analysis of his character. *See Scott v. State*, 840 N.E.2d 376, 384 (Ind.Ct.App. 2006), *trans. denied* (concluding that defendant's mental illness should have been given little weight where defendant was capable of controlling his behavior, did not have significant limitations on his functioning, and failed to identify a nexus between his mental illness and the offense). Consequently, Washington has not carried his burden of persuading this Court that his sentence has met the inappropriateness standard of review.

## CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

BARNES, J., and FRIEDLANDER, J., concur.