**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 21 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**CHRIS M. TEAGLE**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN NORTON, JR., | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | )     No. 05A04-1202-CR-99 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE BLACKFORD CIRCUIT COURT
The Honorable Dean A. Young, Judge
Cause No. 05C01-1109-FB-349

**August 21, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, John Norton, Jr. (Norton), appeals his sentence for burglary, a Class B felony, Ind. Code § 35-43-2-1(B)(i).

We affirm.

## ISSUE

Norton raises one issue on appeal, which we restate as follows: Whether his sentence is inappropriate in light of the nature of the offense and his character.

## FACTS AND PROCEDURAL HISTORY

On July 9, 2011, Justin Peters (Justin) and his mother, Linda Peters, returned from vacation to find that their residence had been burglarized. Electronics, video games, and a knife were taken. Someone had left behind a cell phone along with other personal clothing items at the residence. A friend of Justin's learned who had the stolen property and confiscated it. The friend later met police, naming Chris Love (Love) and Norton as persons involved with the stolen property.

Meanwhile, police obtained a search warrant for the abandoned cell phone. The cell phone contained Love's photo and text messages from an individual named 'Will' that described a planned burglary of the Peters' residence. The police interviewed Love by telephone and he admitted to being at the Peters' house around July 4, 2011, but denied involvement with the burglary. Love stated that he gave his cell phone to Norton.

2

On July 19, 2011, Norton met with police about his involvement with the burglary. Norton admitted knowing Justin, borrowing Love's cell phone, and knowing about the planned burglary, but otherwise denied involvement. However, Norton indicated that another person named 'Will' was involved. The police identified 'Will' as Will Collis (Collis) and questioned him. While denying involvement initially, Collis eventually confessed to entering the Peters' residence with Norton and stealing various items while Love acted as a lookout.

On August 30, 2011, the juvenile court waived its jurisdiction over Norton. On September 8, 2011, the State filed an Information charging Norton with Count I, burglary, a Class B felony, I.C. § 35-43-2-1; Count II, theft, a Class D felony, I.C. § 35-43-4-2(a); and Count III, operating a vehicle without ever receiving a license, a Class C misdemeanor, I.C. § 9-24-18-1. The foregoing charges were unrelated to Norton's burglary of the Peters' residence and subsequently on September 30, 2011, the State filed an additional Information related to the Peters' burglary, charging Norton with Count IV, burglary, a Class B felony, I.C. § 35-43-2-1, and Count V, theft, a Class D felony, I.C. § 35-43-4-2(a).

On January 23, 2012, Norton entered a plea of guilty to Count IV. In exchange for Norton's plea, the State dismissed all other Counts and agreed that the executed portion of Norton's sentence should be capped at six years. At a hearing on February 13, 2012, the trial court accepted Norton's plea of guilty to Count IV. Immediately thereafter, the trial court conducted a sentencing hearing. The trial court sentenced Norton to ten years

with four years suspended to probation. In addition, the trial court ordered Norton to pay restitution of $1,000 to Justin.

Norton now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Norton challenges his sentence under Ind. Appellate Rule 7(B), contending that the trial court's imposed sentence is inappropriate in light of the nature of his offense and his character. Specifically, he requests this court to suspend the six-year executed portion of his sentence to probation.

We first note that Norton's sentence was within the statutory range. Norton was convicted of burglary, a Class B felony. A sentence for a Class B felony ranges from six to twenty years, with an advisory sentence of ten years. I.C. § 35-50-2-5. Here, the trial court imposed an aggregate sentence of ten years, with six years executed and four years suspended to probation.

Under App. Rule 7(B), we may revise a sentence authorized by statute if we find the sentence inappropriate in light of the nature of the offense and the character of the offender. *Id.* To examine the nature of the offense, we review the details and circumstances surrounding the commission of the offense and the defendant's participation in it. *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied.* To examine the character of the offender, we consider the defendant's life and conduct. *Id.* It is the defendant's burden to persuade us that the sentence imposed by

4

the trial court is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Here, Norton did not carry his burden.

We first consider the nature of Norton's offense. The police reports reveal that Norton joined two friends to burglarize the Peters' residence and steal video games and electronic equipment worth over $1,000. While the property stolen was arguably insubstantial, the manner in which Norton set about accomplishing his crime was substantial. Text messages in the abandoned cell phone revealed that Norton and his friends had planned the burglary well in advance. The details of the crime also revealed the offenders' persistence. Upon failing to gain entry through a lower window, Collis and Norton obtained a ladder to break in through an upstairs bedroom window. In sum, this was a premeditated crime, requiring determination on the part of Norton and his compatriots to effect its execution.

We also cannot conclude that Norton's character warrants a revised sentence. Norton cites various factors to argue that his character does not merit an executed sentence of six years. In particular, he relies upon his status as a juvenile at the time of the crime, his mother's offer of support, his remorse, his attempt to make restitution to the victim, and his efforts to obtain schooling during incarceration. While the trial court noted these as mitigating factors, it chose not to ascribe them significant weight.

On the other hand, Norton's significant juvenile history tellingly illustrates the nature of his character. Norton amassed three juvenile adjudications in the five years prior to this conviction, which were for crimes that would have been considered Class A

5

and B misdemeanors as well as Class B, C and D felonies if committed by an adult. As a result, Norton has been placed in a residential treatment facility and made a ward of the Department of Correction on two occasions. These efforts at rehabilitation have apparently been without effect as Norton's crime evinces a lack of respect for the law and the property rights of others.

In arguing that his character does not warrant an executed sentence of six years, Norton relies on *Knight v. State*, 930 N.E.2d 20 (Ind. 2010). In *Knight*, our supreme court revised a juvenile's aggregate sentence of 70 years for multiple convictions of burglary, robbery, and criminal confinement stemming from crimes against multiple victims on the same evening. *Id*. at 21. Despite such crimes, the supreme court concluded the defendant did not possess a character of "recalcitrance or depravity" to justify an aggregate sentence of 70 years. *Id*. at 23. The supreme court revised Knight's aggregate sentence to 40 years based on: his status as a juvenile at the time the crimes were committed, his lack of a prior felony conviction, and his co-defendant's shorter sentence. *Id*. at 22-23.

Here, Norton attempts to analogize his situation to that of *Knight* and argues that since he was a juvenile at the time his crimes were committed and his crimes did not include violence against his victims, his sentence should be revised. While the defendant's character in *Knight* did not justify a 70 year sentence, we have no information regarding what punishment Norton's co-defendants received and also note the disparity between the aggregate 70 year sentence in *Knight* with Norton's aggregate

6

sentence of 10 years. Instead, we conclude that based upon Norton's juvenile history and the planned, persistent, and deliberate manner in which he committed his crimes, the trial court's sentence was appropriate. Accordingly, we find that Norton has not carried his burden to persuade us that his sentence is inappropriate in light of the nature of the offense and his character.

## CONCLUSION

Based on the foregoing, we conclude that Norton's sentence is appropriate in light of the nature of the offense and his character.

Affirmed.

BAILEY, J. and CRONE, J. concur