## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 06 2019, 8:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kenneth Dwayne Lee, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 6, 2019 <br><br> Court of Appeals Case No. 19A-CR-502 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Lisa F. Borges, Judge <br><br> Trial Court Cause No. 49G04-1712-F4-48817 |

**Crone, Judge.**

# Case Summary

Kenneth Dwayne Lee, Jr., appeals the twelve-year sentence imposed by the trial court following his conviction for level 4 felony unlawful possession of a firearm by a serious violent felon. He asserts that the trial court abused its discretion during sentencing and that his sentence is inappropriate in light of the nature of the offense and his character. Finding no abuse of discretion and concluding that Lee has not met his burden to establish that his sentence is inappropriate, we affirm.

# Facts and Procedural History

On December 20, 2017, Indianapolis Metropolitan Police Department Officers Ryan Enochs and Mark Klonne were patrolling the area around 36th Street and Sherman Drive. At approximately 10:55 p.m., a vehicle "cut [them] off" and then immediately made a left turn without signaling. Tr. Vol. 2 at 26. The officers activated the emergency lights on their police cruiser and initiated a traffic stop.

Officer Enochs approached the front driver's side of the vehicle while Officer Klonne stood by the back passenger side of the vehicle. Officer Enochs asked for license and registration information from the driver, and then also asked the passenger, later identified as Lee, for his identification because he was not wearing a seatbelt. Lee refused to provide any identification to Officer Enochs, simply telling him "not to worry about it." *Id*. at 31. Officer Enochs walked back to Officer Klonne to discuss how to proceed. As the officers spoke, Lee

opened the passenger door of the vehicle and fled from the vehicle into an open field.

[4]     Officer Enochs chased after Lee. Officer Enochs could see with his flashlight that Lee was grabbing at the waistband of his pants as he ran. As Lee continued to run, Officer Enochs saw him again grab at his waistband, and Officer Enochs observed the wooden handle of what he believed to be a handgun that Lee was grabbing for. "At that point, [Lee's] pants fell down about mid-knee [and] [h]e fell face first onto the ground and then [a] revolver came flying out." *Id*. at 34. Officer Enochs drew his handgun and ordered Lee to stay on the ground. Lee ignored this command and got up and "attempted to flee again. He started to crawl and then run." *Id*. at 35. His drooping pants quickly caused him to fall again, and at this point Officer Enochs put his handgun away, drew his taser, and ordered Lee to stay on the ground with his hands behind his back.[1] Lee complied with this order and was handcuffed. Officers subsequently discovered that Lee had an outstanding arrest warrant and was on probation.

[5]     While incarcerated at the Marion County Jail, Lee made a phone call to a person identified as C.P. Lee discussed the incident surrounding his arrest.

---

[1] Officer Enochs stated that he put his handgun away and drew his taser because Lee's second fall was far enough away from Lee's discarded revolver that "it was no longer a deadly force encounter" and so "a more intermediate weapon such as a taser" was appropriate. Tr. Vol. 2 at 35.

During the conversation, C.P. asked Lee, "Why you didn't throw it?" State's Ex. 12. Lee responded, "I did … I did, yea." *Id*.

[6] The State charged Lee with level 4 felony unlawful possession of a firearm by a serious violent felon, class A misdemeanor carrying a handgun without a license, and class A misdemeanor resisting law enforcement. The State also alleged that Lee was a habitual offender. The State subsequently dismissed the two class A misdemeanor charges. Following a trial, the jury found Lee guilty of unlawful possession of a firearm but not guilty of being a habitual offender. The trial court imposed a twelve-year executed sentence. This appeal ensued.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion during sentencing.

[7] Lee first asserts that the trial court abused its discretion during sentencing. Specifically, Lee complains that the trial judge made comments on the record indicating her disagreement with the jury's decision to find him not guilty of being a habitual offender. Lee posits that the trial judge's statements indicate that her decision to impose the maximum twelve-year sentence for his level 4 felony was improperly influenced by the jury's acquittal on the habitual offender charge. We disagree.

[8] During sentencing, after finding several aggravating circumstances including Lee's long history of illegal substance abuse, his extensive criminal history, and

his many prior revocations of probation, the trial judge acknowledged that Lee definitely had the support of his family. The judge explained,

> [Y]our family has not turned their back on you, right? They've been there for you and they're going to still be there for you. So I recognize that and I think that's a right thing. That's something that I wish everybody could have.
>
> I think that your family's prayers were answered in the [jury's] verdict in this finding you not to be [a] habitual offender. And I—I can only assume that God knows much better than I could know, right? Because clearly, you were eligible to be treated as a habitual offender. And they found that you had the two prior felonies that were alleged in the—in the trial. But I think that somehow it was some divine intervention. Probably from the prayers of your family that you were—that you were spared that extra 20 years on your sentence because you would have gotten the full boat, right? It would have been the 32-year sentence. And that's pretty much what you would have expected.
>
> But what you have instead is this history of criminal behavior and failures on pre-trial release, etcetera, that make it very difficult for me to place you there, place you back in the community on different kinds of supervision, because none of that's really worked for you in the past. You know, I pray that it will work for you sometime in the future, but I'm not going to do that. I'm going to do a DOC sentence. And its hard to tell you, but it will be 12 years.
>
> So you know, I think that's … I think it's the right thing to do. It is not the 32 years that you would have got if they had come back differently. Your history is one that requires that I be able to answer to the community as well as to you and your family. And I'm going to honor your criminal history by this, because this is an aggravated sentence and I think it's right.

Tr. Vol. 2 at 216-17.

[9] Contrary to Lee's claims, this case is not akin to cases in which our appellate courts have found that the trial court's statements on the record demonstrate that the court invaded the province of the jury and improperly enhanced a sentence to compensate for what the court believed to be an erroneous jury verdict. *See, e.g.*, *Hammons v. State*, 493 N.E.2d 1250, 1253 (Ind. 1986); *Gambill v. State*, 436 N.E.2d 301, 305 (Ind. 1982); *Phelps v. State*, 24 N.E.3d 525, 528 (Ind. Ct. App 2015). Rather, this case is more akin to one in which the judge's statements indicate that the judge merely "entertain[ed] a degree of skepticism" of the jury verdict based upon the evidence presented at trial. *See, e.g.*, *Wilson v. State*, 458 N.E.2d 654, 656 (Ind. 1984).

[10] Here, the trial judge did not blatantly express that she thought the jury's habitual offender determination was improper or erroneous or that she was resolutely opposed to the verdict. She simply observed that Lee could have received a thirty-two-year sentence had the jury found differently on the habitual offender charge. The judge then went on to explain that the maximum sentence of twelve years for the level 4 felony was more than justified based upon Lee's extensive criminal history and multiple probation violations. Under the circumstances, we do not think the trial court's imposition of a twelve-year sentence was "a direct consequence of the trial court's outspoken disagreement" with the jury's habitual offender determination or that an enhanced sentence in this case should be viewed as otherwise "suspect." *Phelps*, 24 N.E.3d at 529.

Therefore, we conclude that the trial court did not abuse its discretion during sentencing.

## Section 2 – Lee has not met his burden to demonstrate that his sentence is inappropriate in light of the nature of his offense or his character.

[11] Lee next requests that we reduce the twelve-year sentence imposed by the trial court pursuant to Indiana Appellate Rule 7(B), which provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence "is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden to persuade this Court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented, and the trial court's judgment "should receive considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1222 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id*. at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other facts that come to light in a given case." *Id*. at 1224. "The question under Appellate Rule 7(B) is not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2007).

[12]     Regarding the nature of the offense, the advisory sentence is the starting point that the legislature has selected as an appropriate sentence for the crime committed. *Fuller v. State*, 9 N.E.3d 653, 657 (Ind. 2014). The sentencing range for a level 4 felony is between two and twelve years, with an advisory sentence of six years. Ind. Code § 35-50-2-5.5. As stated above, the trial court here imposed the maximum twelve-year sentence.

[13]     When reviewing the nature of the offense, this Court considers "the details and circumstances of the commission of the offense." *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*. Lee argues that the facts and circumstances surrounding his possession of a firearm offense "are not particularly egregious." Appellant's Br. at 19. We disagree, as the evidence presented at trial demonstrates much more than a run-of-the-mill case where a serious violent felon is found to be in possession of a firearm. Lee fled the scene of a valid traffic stop and, as he fled, was grabbing at the loaded handgun in his possession. He then tripped and fell, but then got up and fled again, ignoring a clear law enforcement command to stop. There was also evidence that Lee attempted to rid himself of the incriminating handgun during the chase. It was only after Lee tripped and fell a second time, and an officer drew his taser, that Lee finally became compliant. Lee has not persuaded us that sentence revision is warranted based on the nature of this offense.

[14]     Lee fares no better when we consider his character. The character of the offender is found in what we learn of the offender's life and conduct. *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Included in that assessment is

a review of an offender's criminal history. *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied* (2016). Lee's criminal history includes seven prior felony and six prior misdemeanor convictions, as well as countless arrests both as an adult and a juvenile. While previously incarcerated, Lee amassed at least forty-six conduct reports. When previously granted the grace of probation or alternative placement, Lee violated the terms and had his probation or placement revoked. Lee has demonstrated a continued disregard for authority and a complete unwillingness to conform his conduct to the law, and although he blames his struggles with substance abuse for his behavior, nothing about his character inspires us to reduce his sentence. In sum, he has not met his burden to demonstrate that his sentence is inappropriate in light of the nature of the offense or his character. We therefore affirm the twelve-year sentence imposed by the trial court.

[15] Affirmed.

Baker, J., and Kirsch, J., concur.