## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 18 2020, 8:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Chad A. Montgomery
Montgomery Law Office
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert L. Yates
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kerry L. Bush, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | February 18, 2020 <br><br> Court of Appeals Case No. 19A-CR-1639 <br><br> Appeal from the Warren Circuit Court <br><br> The Honorable Hunter Reece, Judge <br><br> Trial Court Cause No. 86C01-1804-F6-37 |

**Robb, Judge.**

# Case Summary and Issues

[1] A jury found Kerry Bush guilty of operating a vehicle while intoxicated ("OWI") and operating a vehicle with an alcohol concentration equivalent ("ACE") to .08 or more, both Class C misdemeanors, and operating a vehicle with suspended driving privileges and a prior conviction ("operating while suspended"), a Class A misdemeanor.[1] The trial court subsequently found that Bush had a prior conviction for OWI within the past five years so as to elevate the Class C misdemeanors to Level 6 felonies and further found Bush to be an habitual vehicular substance offender. The trial court sentenced Bush to two years for the OWI conviction enhanced by seven years due to his habitual vehicular substance offender status, to be served in the Indiana Department of Correction, with four years suspended to probation.[2] Bush appeals and raises two issues for our review, which we restate as: 1) whether there is sufficient evidence to show that he "operated" a vehicle, and 2) whether his nine-year sentence is inappropriate in light of the nature of his offenses and his character. Concluding that there is sufficient evidence to support his convictions and his sentence is not inappropriate, we affirm.

---

[1] Operating a motor vehicle on a highway with suspended driving privileges is a Class A infraction. Ind. Code § 9-24-19-1. If a person knows their driving privileges are suspended and operates a motor vehicle on a highway less than ten years "after the date on which judgment was entered against the [person] for a prior unrelated violation of section 1," the offense is a Class A misdemeanor. Ind. Code § 9-24-19-2.

[2] The trial court vacated the operating with an ACE of .08 or more conviction over double jeopardy concerns and did not sentence Bush to any time for the operating while suspended conviction. *See* Appealed Order at 3.

# Facts and Procedural History

[2] Around midnight on April 20, 2019, Deputies Brennan Hutchison and Brant Needler of the Warren County Sheriff's Office responded to a report of a rollover crash on State Road 55. Upon arrival, the deputies noticed "debris all over the roadway" and a vehicle in a ditch that had its windows broken, top crushed, and windshield shattered. Transcript, Volume 2 at 57. No one was in the vehicle when deputies arrived, but they were eventually notified that the vehicle belonged to Bush. Bush's identification card and his checkbook were also located at the scene. Because the accident "appeared to be very serious" and "[p]otentially life threatening[,]" the deputies and other emergency personnel began searching the area for injured individuals. *Id*. at 70, 72.

[3] Deputy Needler located Bush three-quarters of a mile from the car lying face down and motionless in a ditch. Deputy Needler "thought it was bad[,]" but to his surprise, Bush immediately got up and began speaking with him. *Id.* at 74. Deputy Needler observed that Bush was bleeding and had "glass shar[d]s in his forehead[,]" and found it odd that if Bush was conscious, he had not flagged down any of the "multiple emergency vehicles [that had gone] by with sirens[.]" *Id*. Bush denied having been involved in an accident despite his physical condition and said he did not want to be treated by emergency personnel. Nonetheless, Deputy Needler drove Bush back to the crash site for treatment. During the ride there, Bush told Needler that he was returning from Lafayette and headed home. Deputy Needler identified signs of intoxication, including that Bush smelled of alcohol and had glassy eyes and unsteady balance. Bush

indicated that he had consumed alcohol that evening and informed Deputy Needler that "he believe[d] he would be above the legal limit." *Id*. at 90.

[4] While Bush was being attended to by emergency personnel, Bush told Deputy Needler that "Lisa," a woman whom he had met earlier in the day, had been driving his vehicle, not him. However, Bush could not provide any additional information about Lisa, nor did he show any concern for her. Nevertheless, officers searched the area for fifteen or twenty minutes looking for Lisa but could not locate her, nor did they find any indication that someone else had been in the vehicle. Deputies even called the local hospital, but no one had checked in as a result of a car accident. Deputy Needler transported Bush to the Warren County Jail for field sobriety and chemical tests. Bush failed the field sobriety tests, and the results of his chemical test showed he had an ACE of .13%.

[5] The State charged Bush with OWI and operating a vehicle with an ACE of .08 or more, alleging on a separate page of the information that he had a prior OWI conviction within five years of these offenses which would elevate both to Level 6 felonies. He was also charged with operating while suspended, a Class A misdemeanor. The State later amended the charging information to add an habitual vehicular substance offender enhancement, alleging that Bush had accumulated two or more prior unrelated vehicular substance abuse offense convictions. A jury found Bush guilty of OWI, operating with an ACE of .08 or more, and operating while suspended. Bush waived his right to a jury for the enhancement phase of the trial, and the trial court found that Bush had a

previous OWI conviction within the past five years. The trial court also found Bush to be an habitual vehicular substance offender.

[6] At his sentencing hearing, Bush testified that he has support from his family and has worked for nearly forty years. In determining Bush's sentence, the trial court considered Bush's criminal history an aggravating circumstance and did not find any mitigating circumstances. The trial court entered judgment of conviction for OWI as a Level 6 felony and operating while suspended. The trial court sentenced Bush to nine years: two years for OWI, enhanced by seven years due to his habitual vehicular substance offender status, with four years suspended to probation. Bush now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

### A. Standard of Review

[7] Bush challenges the sufficiency of the evidence to support his convictions of Level 6 felony OWI and Class A misdemeanor operating while suspended. Our standard of review in this area is well-settled: when reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). Rather, we consider only the evidence supporting the verdict and any reasonable inferences drawn therefrom. *Id*. Thus, we consider conflicting evidence "most favorably to the [verdict]." *Drane v. State*, 867 N.E.2d 144, 146

(Ind. 2007) (internal quotations omitted). "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey*, 907 N.E.2d at 1005.

## B. "Operating" a Vehicle

[8]     To convict Bush of OWI as a Level 6 felony, the State had to prove beyond a reasonable doubt that Bush: 1) operated a vehicle; 2) while intoxicated; and 3) while having a prior conviction of operating while intoxicated that occurred within the last five years. *See* Ind. Code §§ 9-30-5-2(a), 9-30-5-3(a)(1) (2014). Similarly, to convict Bush of operating a vehicle with suspended driving privileges as a Class A misdemeanor, the State had to prove that Bush 1) knew his driving privileges were suspended; and 2) operated a motor vehicle upon a highway; 3) with a prior unrelated conviction for operating while suspended within the last ten years. Ind. Code § 9-24-19-2. Bush claims only that the State failed to prove beyond a reasonable doubt that he "operated" his vehicle. *See* Tr., Vol. 2 at 123; Appellant's Brief at 12.

[9]     The Indiana Code defines "operate" as "to navigate or otherwise be in actual physical control of a vehicle[.]" Ind. Code § 9-13-2-117.5. Whether a defendant has "operated" a vehicle is a question of fact to be determined by examining the surrounding circumstances. *Custer v. State*, 637 N.E.2d 187, 188 (Ind. Ct. App. 1994). We have considered the following factors in assessing whether a person has operated a vehicle: 1) the location of the vehicle when discovered; 2)

whether the car was moving when discovered; 3) any additional evidence indicating that the defendant was observed operating the vehicle before he or she was discovered; and 4) the position of the automatic transmission. *Crawley v. State*, 920 N.E.2d 808, 812 (Ind. Ct. App. 2010), *trans. denied*. This is not an exclusive list and therefore, "[a]ny evidence that leads to a reasonable inference should be considered." *Id*.

[10]     In support of his argument that the State offered insufficient evidence that he "operated" the vehicle, Bush relies on *Mordacq v. State*, 585 N.E.2d 22 (Ind. Ct. App. 1992). There, an officer observed a vehicle parked alongside the road with its engine running. An hour later, the officer returned to find that the vehicle was still there, and that the defendant was asleep in the driver's seat with the engine still running. After the defendant was awakened, the officer noticed the odor of alcohol on the defendant's breath. The defendant told the officer that she had driven to that area at least two hours earlier, but there was no other evidence as to how or when the vehicle arrived at that location. The defendant was convicted of operating a vehicle with a blood alcohol content over the legal limit. A panel of this court reversed the conviction, holding that there was insufficient evidence that the defendant had operated her vehicle, in part, because there was "no evidence that [her] car was stopped in the travel portion of the roadway[; the officer] consistently used the word 'parked.'" *Id*. at 24 (comparing cases finding "operation" where defendant was found behind the

wheel of a running vehicle in the median of a highway, at an intersection, and stopped in a lane of traffic).[3]

[11]    *Mordacq* is clearly distinguishable. Deputies Needler and Hutchinson located Bush's severely damaged rolled vehicle in a ditch, not simply parked alongside the roadway like in *Mordacq*. Although Bush was not in the vehicle when it was discovered, Bush was found nearby. He insisted that he had not been in an accident, but he was injured, the vehicle was registered to him, and his personal effects were found in and around the vehicle. He told Deputy Needler that he was returning home from Lafayette and only after several minutes had passed did he mention that someone else had been driving the vehicle. However, no evidence was found to support his assertion that there was another person in the car. From the location of Bush's vehicle, his physical condition, and the lack of evidence of a second person, it can be inferred that Bush was in actual physical control of his vehicle when it left the highway and rolled into the ditch and that he met the statutory definition of "operate." Bush's argument that we should conclude otherwise is merely a request for us to reweigh the evidence, which we will not do. *See Bailey*, 907 N.E.2d at 1005. Therefore, the State proved beyond a reasonable doubt that Bush "operated" a vehicle.

---

[3] *Mordacq* was decided before the definition of "operating" was added to the Indiana Code, and the court therefore deduced the meaning of "operating" from the statutory definition of "operator."  585 N.E.2d at 23 (citing Ind. Code § 9-13-2-118(a)(1) (1991)).

## II.  Inappropriate Sentence

### A.  Standard of Review

We may review and revise criminal sentences pursuant to the authority derived from Article 7, section 6 of the Indiana Constitution. Indiana Appellate Rule 7(B) empowers us to revise a sentence "if, after due consideration of the trial court's decision, [we] find[] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Therefore, when reviewing a sentence, we give deference to the trial court's sentencing decision because Rule 7(B) requires us to give "due consideration" to the decision and we recognize the unique perspective of the trial court in making sentencing decisions. *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). "Such deference should prevail unless overcome by compelling evidence portraying in a positive light the nature of the offense . . .  and the defendant's character[.]" *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Our principal role in Rule 7(B) review is to "leaven the outliers[.]" *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).

The defendant carries the burden to persuade us that the sentence imposed by the trial court is inappropriate, *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006), and we may look to any factors appearing in the record in making such a determination, *Reis v. State*, 88 N.E.3d 1099, 1102 (Ind. Ct. App. 2017). The question under Rule 7(B) is "not whether another sentence is *more* appropriate; rather, the question is whether the sentence imposed is inappropriate." *King v. State*, 894 N.E.2d 265, 268 (Ind. Ct. App. 2008).

# B. Nature of the Offense

We begin our analysis of the nature of the offense with the advisory sentence, which is the starting point selected by the legislature as an appropriate sentence. *Reis*, 88 N.E.3d at 1104. Bush was convicted of OWI as a Level 6 felony, operating while suspended as a Class A misdemeanor, and was found to be an habitual vehicular substance offender. The advisory sentence for a Level 6 felony is one year, with a minimum sentence of six months and a maximum sentence of two and one-half years. Ind. Code § 35-50-2-7(b). The maximum sentence for a Class A misdemeanor is one year. Ind. Code § 35-50-3-2. The minimum sentence enhancement for a person found to be an habitual vehicular substance offender is one year and the maximum enhancement is eight years. Ind. Code § 9-30-15.5-2(d). Bush was sentenced to two years for his Level 6 felony conviction and no years for his Class A misdemeanor; his sentence was enhanced by seven years due to his habitual vehicular substance offender status. Although Bush's sentence for the Level 6 felony conviction and the enhancement for the habitual offender status were above the minimum, they still fell short of the maximum sentence allowed.

The nature of the offense is found in the details and circumstances surrounding the offense and the defendant's participation therein. *Perry v. State*, 78 N.E.3d 1, 13 (Ind. Ct. App. 2017). Bush has not offered an argument regarding the nature of his offenses; however, they are serious. Bush drove his vehicle with an ACE of .13%, which is well above the legal limit of .08% in Indiana. Not only did Bush drive while intoxicated, he drove in a manner that caused his vehicle to

roll into a ditch, causing substantial damage to his vehicle and injury to himself. Bush did not wait for emergency assistance; rather, he tried to escape responsibility by leaving the scene of a serious accident and seemed to be hiding from emergency personnel. Bush's irresponsible actions could have endangered other individuals driving on the road or even killed them. Bush's actions show a disregard for others and nothing about the nature of his offenses leads us to believe that his sentence is inappropriate.

## C.  Character of the Offender

[16]    A defendant's life and conduct are illustrative of his character. *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*. One relevant factor in assessing character is a defendant's criminal history. *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind. Ct. App. 2007). The significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense. *Id*. Bush has a criminal record dating back to 1997. Bush's criminal history consists of two prior convictions for operating a vehicle while intoxicated as Class A misdemeanors; two prior convictions for operating while intoxicated with a prior conviction, both felonies; public intoxication, a Class B misdemeanor; possession of marijuana, domestic battery, resisting law enforcement, and three driving while suspended convictions, all Class A misdemeanors; and one prior habitual vehicular substance offender determination in 2015. Bush has been placed on and violated probation multiple times and was on probation at the time he committed the instant offense. The nature of many of Bush's prior offenses are similar to the instant

offenses, and despite his numerous contacts with the justice system, he was not deterred from committing the current offenses.

[17] Further, Bush attempted to cover up his crime by evading law enforcement and fabricating a story. When officers located Bush, he was face down in a ditch three-quarters of a mile away from the accident. He made no attempt to flag down passing emergency vehicles, even in light of his physical condition. This indicates that Bush likely fled the scene with the intention of escaping punishment. Even after being discovered, Bush repeatedly told Deputy Needler that he was not involved in an accident despite clearly being injured. Although Bush initially told Deputy Needler that he was returning home from Lafayette, several minutes later, Bush claimed that a woman whom he had met that day drove his vehicle. However, Bush could not provide Deputy Needler with any details about this woman, nor did he show any concern for her well-being. Despite searching the area and calling local hospitals, deputies did not locate the woman or find anything belonging to her that would indicate she had been with Bush.

[18] In an attempt to portray his character in a positive light, Bush emphasizes that he has support from his family and has held a job for nearly forty years; however, we are unpersuaded that family support and steady employment overcome his significant criminal history and the serious nature of his current offenses. Accordingly, Bush has failed to establish that his character renders his sentence inappropriate.

# Conclusion

The State presented sufficient evidence to support Bush's convictions for OWI and operating while suspended, and Bush's sentence is not inappropriate in light of the nature of his offenses and his character. Accordingly, we affirm.

Affirmed.

Bradford, C.J., and Altice, J., concur.