## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 22 2020, 10:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Devon M. Sharpe
Jenner & Pattison
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph Newcome, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | June 22, 2020 <br><br> Court of Appeals Case No. 19A-CR-2961 <br><br> Appeal from the Jefferson Circuit Court <br><br> The Honorable Donald J. Mote, Judge <br><br> Trial Court Cause No. 39C01-1905-F1-551 |

**Mathias, Judge.**

[1]     Joseph Newcome was sentenced by the Jefferson Circuit Court to thirty-eight years in the Department of Correction ("DOC") following his plea of guilty but

mentally ill to Level 1 felony attempted murder. On appeal, Newcome contends that the sentence is inappropriate in light of the nature of the offense and his character as an offender.

[2] We affirm.

## Facts and Procedural History

[3] On May 3, 2019, Newcome and Jonathan Bell, coworkers at a factory in Madison, Indiana, went together after their shift to Bell's room at a local inn. Newcome used methamphetamine and made a sexual advance on Bell, who did not return the advance but allowed Newcome to stay in the room. After some time, Newcome was overcome by anger, suspicion, and paranoia toward Bell, who had fallen asleep on his bed with a sheathed knife attached to his belt. Newcome texted his mother pictures of the sleeping Bell and stated he would "fix [Bell's] tune" and "just jump on him and get it fixed." Ex. Vol., pp. 5–11. Newcome ignored his mother's advice to "chill." *Id.* at 12.

[4] Newcome instead grabbed the knife from Bell's belt and stabbed Bell three times, in the abdomen and the arm. Newcome stole Bell's paycheck before fleeing the room. He discarded his shirt and encountered a neighbor, from whom he demanded a new shirt to change into. The neighbor allowed Newcome to use her phone and overheard Newcome say that he had "taken care of it" and not to call the police. Appellant's App. pp. 24–27. The neighbor called the police after Newcome left and provided law enforcement with his description.

[5] Meanwhile, officers with the Jefferson County Sheriff's Department responded to a report of a stabbing at the inn and a suspect who had fled on foot. Bell was found lying on his back, critically injured, and was transported via stat flight to the University of Louisville hospital in Kentucky for emergency treatment. There he underwent surgery to remove his right kidney, which had been "completely shattered and lacerated almost in half," and to partially resect his small intestine, which had been perforated "through and through." Confidential Ex. Vol., pp. 20–21. Bell also suffered a lacerated liver, diaphragm injury, and hematoma on the right side of his body. *Id.*

[6] Based on the neighbor's description of the man who had entered her house to change clothes, and on the eyewitness at the inn, officers identified Newcome as the likely suspect in the stabbing. Law enforcement located Newcome's mother and reviewed their text messages from earlier that day. After changing his shirt, Newcome had arrived at his mother's workplace, and she gave him money for food. Approximately five hours after his attack on Bell, Newcome was apprehended in the parking lot of a local Burger King, where he had bought a meal with the money from his mother. Bell's paycheck was found in Newcome's possession. Newcome admitted to stabbing Bell during a subsequent jail interview with a Madison City police detective.

[7] Newcome was charged on May 6, 2019, with Level 1 felony attempted murder, Level 1 felony burglary, Level 3 felony aggravated battery, and an habitual offender enhancement. The charges were later amended, with the State omitting the burglary offense and adding two counts of Level 2 felony robbery,

Level 4 felony burglary, and Class A misdemeanor theft. The trial court entered an order appointing two mental health experts upon Newcome's motion for immediate hearing to determine his competency to stand trial, and it set the competency hearing for August 26, 2019. Newcome was subsequently examined by two disinterested professionals. Dr. Daniel Hackman, a forensic psychiatrist, filed his report on August 19, which concluded that Newcome was "capable of understanding the proceedings against him and assisting in the preparation of his defense." Appellant's App. pp. 51–59. Dr. Stephanie Callaway, a licensed clinical psychologist, filed her report on August 21, similarly concluding that Newcome "has an understanding of the proceedings and he has the ability to aid his attorney in his defense." *Id.* at 60–66. Newcome thus withdrew his competency motion on August 27.

[8]     A plea agreement was filed with the court following a plea hearing on October 8, 2019. Newcome pleaded guilty but mentally ill to Level 1 felony attempted murder, and the remaining charges were dismissed. The agreement left sentencing to the discretion of the trial court, subject to the statutory penalty range for that class of offense. On November 20, 2019, the trial court entered an order on the plea and held Newcome's sentencing hearing. Judgment of conviction and a sentencing order were entered on November 22, with Newcome ordered to serve a thirty-eight-year sentence in the DOC with no time suspended. This appeal followed.

# Discussion and Decision

[9] Newcome's sole contention on appeal is that his thirty-eight-year executed sentence is inappropriate in light of the nature of his offense and his character as an offender. Newcome was convicted of Level 1 felony attempted murder. The sentencing range for a Level 1 felony conviction is between twenty and forty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4. Newcome appeals for a downward revision of his sentence.

[10] Article 7, Sections 4 and 6 of the Indiana Constitution authorize "independent appellate review and revision of a sentence imposed by the trial court." *Roush v. State*, 875 N.E.2d 801, 812 (Ind. Ct. App. 2007). This appellate authority is exercised through Appellate Rule 7(B), which states that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [this] Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

[11] Indiana's sentencing scheme allows trial courts to tailor appropriate sentences based on the circumstances presented; accordingly, the trial court's judgment should receive "considerable deference" and our role upon appellate review is to attempt to "leaven the outliers." *Cardwell v. State*, 895 N.E.2d 1219, 1223, 1225 (Ind. 2008). Our review may include the aggravators and mitigators identified by the trial court, in addition to any other pertinent factors in the record, such as the "sense of the culpability of the defendant, the severity of the crime, [and] the damage done to others." *Id.* at 1224. We will not revise a

sentence in the absence of compelling evidence that portrays in a positive light the nature of the offense and the defendant's character. *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). Furthermore, we do not probe whether the defendant's sentence is appropriate or if another sentence might be more appropriate; rather, the test is whether the sentence imposed is inappropriate. *Fonner v. State*, 876 N.E.2d 340, 344 (Ind. Ct. App. 2008). Thus, revision under Rule 7(B) is proper only in "exceptional cases." *Livingston v. State*, 113 N.E.3d 611, 613 (Ind. 2018). It is the defendant's burden to persuade the Court that his sentence meets the inappropriateness standard. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007).

[12] In considering whether a sentence is inappropriate in light of the nature of the offense, we compare the elements of the offense to the "details and circumstances of the commission of the offense." *Townsend v. State*, 45 N.E.3d 821, 831 (Ind. Ct. App. 2015), *trans. denied*. Newcome stabbed Bell while Bell slept, causing significant injury that necessitated Bell's ambulatory airlift to receive critical care, including emergency surgery. Confidential Ex. Vol., pp. 20–21. Based on the evidence of Bell's life-threatening injuries, the trial court did not err in determining that the injury Newcome caused was "greater than the elements necessary to prove the commission of [Level 1 felony attempted murder]." Tr. p. 80. We note, too, the additional, disturbing circumstances of Newcome's attack on Bell that warrant an elevated sentence: Newcome's texts to his mother shortly before the attack are evidence of his awareness that Bell could suffer serious injury; Bell's inability, as he slept, to defend himself at the

moment of Newcome's attack; and Newcome's opportunistic choice to steal from Bell before fleeing the scene. Accordingly, nothing about the circumstances of Newcome's commission of Level 1 felony attempted murder indicates that an above-advisory sentence of thirty-eight years is inappropriate. *See Reis v. State*, 88 N.E.3d 1099 (Ind. Ct. App. 2017) (finding that the egregious nature of an offense supports a sentence in excess of the advisory sentence).

[13] Newcome also contends that his character as an offender warrants a sentencing revision. The character of a defendant as evidenced by his life and conduct is relevant for sentencing purposes. *Washington v. State*, 940 N.E.2d 1220, 1222 (Ind. Ct. App. 2011), *trans. denied*. A defendant's criminal history is part of our consideration of his character under Appellate Rule 7(B). *Pelissier v. State*, 122 N.E.3d 983, 990 (Ind Ct. App. 2019), *trans. denied*. And it is well-settled that a defendant's criminal history varies in significance based upon the "gravity, nature and number of prior offenses *as they relate to the current offense*." *Smith v. State*, 889 N.E.2d 261, 263 (Ind. 2008) (emphasis added) (internal quotation marks and citation omitted).

[14] Here, Newcome admitted to being under the influence of methamphetamine when he attacked his victim. Tr. pp. 31, 58. Newcome's admission in the instant case is only the most recent and egregious example of the nexus between his drug use and his criminality: Newcome has past illegal-substance-related misdemeanor convictions and a prior conviction for Class D felony unlawful possession of a syringe, among others. Appellant's App. pp. 119–20. That Newcome was previously charged with Class A felony conspiracy to commit

dealing in methamphetamine further reflects poorly on his character, as an indication that past contact with the criminal justice system has not deterred him from committing further criminal acts. *See Cotto v. State*, 829 N.E.2d 520, 526 (Ind. 2016).

And, Newcome has not persuaded us, nor do the expert psychiatric reports indicate, that aspects of his character, including his history of mental illness, call for downward revision of his sentence. During sentencing, the trial court appropriately considered Newcome's mental illness a mitigating factor. Tr. pp. 79–80. On appeal, Newcome argues that his mental disorder diminishes his culpability for the attack on Bell and thus should be considered as an aspect of his character warranting a lesser sentence. Appellant's Br. pp. 15–16. But the results of Newcome's psychiatric evaluations included the finding that Newcome was not exhibiting "active or acute signs of mental disorder," and rather that the auditory hallucinations he claimed to have experienced at the time of his attack were more likely an effect of his drug abuse. Appellant's App. p. 66. Based on Newcome's admission that he was under the influence of methamphetamine, there was no error in the trial court's determination that the significance of Newcome's mental illness was diminished as a mitigating factor. Accordingly, our review of Newcome's character as an offender does not indicate that an above-advisory sentence of thirty-eight years is inappropriate.

## Conclusion

Newcome's argument that his thirty-eight-year sentence—two years shorter than the maximum allowed by statute—amounted to a "de facto maximum

sentence" is of no avail. Appellant's Br. pp. 12, 14. Newcome has not persuaded us that his thirty-eight-year sentence is inappropriate in light of the nature of his offense and his character as an offender, such that it warrants revision under Appellate Rule 7(B). Accordingly, we hold that Newcome's thirty-eight-year sentence is not inappropriate.

[17] Affirmed.

Riley, J., and Tavitas, J., concur.